

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILE DIVISION
Case No. 4:98 CV 233-T

RECEIVED ASHEVILLE, N.C. MAR 29 1999 Clerk, U.S. Dist. Court W. Dist. N. C.

FILED CHARLOTTE, N.C. 99 MAR 25 PM 4:59 U.S. DISTRICT COURT W. DIST. OF N.C.

| | |
|---|---|
| Estate of Sandra Marie Wilkins, Deceased; Lula Wilkins, as Administrator of the Estate of Sandra Marie Wilkins; Dwayne K. Wilkins, Kitina M. Wilkins, Debbie N. Wilkins, and Lagwenda Wilkins, <br><br> Plaintiffs, <br><br> vs. <br><br> Sheriff Daniel Good, individually and in his official capacity; Travelers Insurance Co. Inc., as Bonding Agent For Sheriff Daniel Good; Chief Deputy Floyd Anders Laughter individually and in his official capacity; The Estate of Tom McDevitt, individually, in his official capacity and/or his Successors in interest Police Chief Randy Chapman, individually and in his official capacity; Officer Robert Ward, individually and in his official capacity, Deputy Jimmy Hicks, individually and in his official capacity; Officer Conrad Dillard, individually and in his official Capacity; Rutherford County, N.C., and Forest City, North Carolina. <br><br> Defendants. | AMENDED COMPLAINT |

## JURISDICTION

1. PLAINTIFFS bring this action against the defendants to redress the deprivation of rights secured them by the First Amendment to the United States Constitution, 42 U.S.C. §§ 1983, 1985(2), 1985(3), and 1986, Article 18 of the North Carolina Constitution, the common law and the General Statutes of the State of North Carolina.

2. Plaintiffs are citizens of North Carolina. Each defendant is, upon information

1

30

and belief, a citizen of North Carolina, or is licensed to do business in the state of North Carolina. The matter in controversy exceeds the sum of $50,000.00, exclusive of interest and costs.

3. This court has jurisdiction over this matter Pursuant to 28 U.S.C. §§ 1331, 1343(a)(1), 1343(a)(3), and 42 U.S.C. §§ 1983, 1985(2), 1985(3), and 1986.

4. Plaintiffs also invokes supplemental jurisdiction of this Court over the plaintiffs' state claims against the defendants for common law, statutory and constitutional violations pursuant to 28 U.S.C. § 1367, as the state claims form part of the same case or controversy.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## PARTIES

6. Plaintiffs are citizens and residents of Rutherford County, North Carolina and have been citizens and residents of Rutherford County North Carolina; and. Plaintiff Lula Wilkins is the Administrator of a North Carolina Estate called the Estate of Sandra Marie Wilkins pursuant to North Carolina General Statutes § 28A-18.2.

7. Defendant Sheriff Daniel Good is a citizen and resident of Rutherford County, North Carolina; and that he is and was at all times mentioned herein the duly elected and acting Sheriff Rutherford County, North Carolina, and the supervisor of Defendant Floyd Anders Laughter. Defendant Good is being sued individually and in his official capacity as Sheriff of Rutherford County.

8. Defendant Travelers Insurance Co. Inc., is believed to be a citizen and resident

2

of Hartford Connecticut, doing business in the State of North Carolina, and is believed to be the bonding agent for Defendant Sheriff Daniel Good.

9. Defendant Floyd Anders Laughter is a citizen and resident of Rutherford County, North Carolina; and Defendant Laughter is and was at all times mentioned herein a duly appointed and acting officer of the Rutherford County Sheriff's Department for Rutherford County, North Carolina. Defendant Laughter is being sued individually and in his official capacity as a Chief Deputy Sheriff of the Rutherford County Sheriff's Department and employee of Rutherford County, North Carolina.

10. Defendant Robert Ward is a citizen and resident of Rutherford County, North Carolina; and at all times mentioned herein he is and was a duly appointed an acting police officer of the Forest City Police Department for Forest City, North Carolina. Defendant Ward is being sued individually and in his official capacity as a police officer of the Forest City Police Department and as an employee of Forest City, North Carolina.

11. Defendant Jimmy Hicks is a citizen and resident of Rutherford County, North Carolina; and at all is and was at all times mentioned herein a duly appointed and acting officer of the Rutherford County Sheriff's Department for Rutherford County, North Carolina. Defendant Hicks is being sued individually and in his official capacity as a Chief Deputy Sheriff of the Rutherford County Sheriff's Department and as an employee of Rutherford County, North Carolina.

12. Defendant Estate of Tom McDevitt, deceased, but that at the time the events herein occurred Tom McDevitt was a citizen and resident of Rutherford County, North

3

Carolina; and, he was the duly appointed Chief of Police for the town of Forest City, North Carolina's Police Department during the time the events complained of herein occurred. The Estate of Defendant McDevitt is being sued individually and in his official capacity as a police officer of the Forest City Police Department and as an employee of Forest City, North Carolina.

13. Defendant Police Chief Randy Chapman is a citizen and resident of Rutherford County, North Carolina; and he is the duly appointed Chief of Police for the town of Forest City, North Carolina's Police Department. Defendant Chapman is being sued individually and in his official capacity as a police officer of the Forest City Police Department and as an employee of Forest City, North Carolina.

14. Defendant Conrad Dillard is a citizen and resident of Rutherford County, North Carolina; and at all times mentioned herein he is and was a duly appointed an acting police officer of the Forest City Police Department for Forest City, North Carolina. Defendant Dillard is being sued individually and in his official capacity as a police officer of the Forest City Police Department and as an employee of Forest City, North Carolina.

15. That Defendant Rutherford County, North Carolina is believed to be a Municipality organized under the laws of the State of North Carolina and doing business as a municipality.

16. That Defendant Forest City, North Carolina is believed to be a Municipality organized under the laws of the State of North Carolina and doing business as a municipality.

17. At all times mentioned herein, while the defendants took it upon themselves to act within their individual capacities to violate the law, they were also acting under the cover and under color of law, of a statute, ordinance, regulation, custom, or usage.

4

18. Defendants' governmental immunity has been waived by either the purchase of liability insurance or participation in a statutory risk pool; and that the Defendant Sheriff Daniel Good has purchased a bond pursuant to North Carolina General Statute § 58-76-5, and § 162-8, from the Defendant Travelers Insurance Co. Inc.

## FACTUAL BACKGROUND

19. Plaintiffs Lula Wilkins, is the administrator, and Dwayne K. Wilkins, Kitina M. Wilkins, Debbie N. Wilkins, and Lagwenda Wilkins are the children and/or heirs of the deceased, Sandra Wilkins, who was killed in an automobile accident, on September 15, 1991, when Defendant Laughter struck and killed her while negligently and illegally driving a Rutherford County Sheriff's Department vehicle.

20. Defendant Good, at all times material hereto, was the chief law enforcement officer of the Rutherford County Sheriff's Department.

21. Defendant Good, at all times material hereto, was the final decision maker of the Rutherford County Sheriff's Department.

22. Defendant Good, Defendant Good, at all times material hereto, was responsible for all policies and procedures of the Rutherford County Sheriff's Department.

23. Defendant Good, at all times material hereto, was responsible for training and supervision of all officials and employees of the Rutherford County Sheriff's Department.

24. Defendant McDevitt and/or Defendant Chapman, at all times material hereto, was the chief law enforcement officer of the Forest City Police Department

25. Defendant McDevitt and/or Defendant Chapman, at all times material hereto,

5

was the final decision maker of the Forest City Police Department.

26. Defendant McDevitt and/or Defendant Chapman, at all times material hereto, was responsible for all policies and procedures of the Forest City Police Department.

27. Defendant McDevitt and/or Defendant Chapman, at all times material hereto, was responsible for training and supervision of all officials and employees of the Forest City Police Department.

28. That on or about 01:37 a.m. Plaintiffs' deceased, Sandra Wilkins, was a pedestrian crossing the street on U.S. 74 Business.

29. That at the time and place and on the occasion herein in question, the defendant Laughter, was operating a 1990 Chevrolet which is believed to have been a Rutherford County Sheriff's patrol car, owned by the Defendant Rutherford County, under the care and supervision of the Defendant Sheriff Daniel Good.

30. That when the said 1990 Chevrolet vehicle being operated by the Defendant Laughter, reached a point on U.S. Business 74 in or near Forest City, North Carolina in the same general location and direction in which plaintiffs' deceased, Sandra Wilkins, was a pedestrian, the defendant Laughter, did operate the motor vehicle he was operating in such a manner as to strike a pedestrian, the plaintiffs' deceased, Sandra Wilkins, while walking across the street; wherein the Defendant Laughter struck the plaintiffs' deceased, Sandra Wilkins, carrying her several feet and throwing her several feet.

31. That the vehicle being driven and operated by the defendant Laughter was believed at all times and places and at all times herein in question owned by the defendant Rutherford County and was registered with the department of Motor vehicles for the State of

6

North Carolina in the name of the defendant Rutherford County .

32.  That at the time and place and at all times herein question, the defendant

Laughter was the agent and employee of the defendants, Sheriff Daniel Good and Rutherford

County, and was operating the said 1990 Chevrolet motor vehicle within the scope of his

employment and in furtherance thereof and with the knowledge, permission, and express consent

of the owner of said vehicle, the defendant Rutherford County.

33.  That at the time and place and at all times herein in question, the defendants

Good and Rutherford County had entrusted the 1990 Chevrolet motor vehicle to the defendant

Laughter.

34.  That the defendant Laughter was negligent in the following respects:

(a)  He failed to keep and maintain a reasonably careful and proper lookout in his

direction of travel;

(b)  He failed to keep said vehicle under reasonable and proper control;

(c)  He failed to keep a look out for pedestrians crossing the street and was operating

the vehicle faster than was reasonable and prudent under the circumstances and conditions then

and there existing, in violation of North Carolina General Statues § 20-152;

(d)  He drove said vehicle upon a public highway at an unlawful and excessive rate of

speed, exceeding the posted speed limit and at a speed greater than was reasonable and prudent

under the circumstances and conditions then and there existing, in violation of North Carolina

General Statutes § 20-141;

(e)  He operated the aforesaid motor vehicle on the public highway in question without

proper training or experience in the operation of the vehicle with a braking system such as the one

7

in operation on the motor vehicle he was operating; or with a reckless disregard for the proper operation of the braking system of the vehicle he was operating;

(f) It is believed and therefore alleged that the defendant Laughter operated the motor vehicle while subject to an impairing substance, which greatly impaired his vision, his judgment and ability to react to changing road conditions.

35. That at the time and place and prior to the date in question, the defendant Laughter was believed to be a habitually careless, reckless and negligent driver and had regularly and habitually operated motor vehicles in violation of and disregard of the motor vehicle laws of the State of North Carolina and under the influence of alcohol.

36. That on September 15, 1991, the defendants, Sheriff Good and Rutherford County through its officers, directors and agents, knew or in the exercise of reasonable care, had reason to know and should have known that the defendant Laughter was a habitually careless, reckless and negligent driver and that the defendant Laughter regularly and habitually operated motor vehicles in a manner that was in violation of the motor vehicle laws of the State of North Carolina, and that he operated the said vehicle under the influence of alcohol.

37. That in conscious disregard of the aforesaid knowledge, the defendant Good, for and on behalf of himself and defendant Rutherford County, North Carolina, knowingly, willfully and wantonly continued to permit the defendant Laughter to operate motor vehicles belonging to the defendant Rutherford County, North Carolina, upon the streets and highways of the State of North Carolina without restriction, training or proper supervision and the aforesaid willful and wanton acts and conduct of the defendant Good concurred with the aforesaid acts and conduct of the defendant Laughter, causing the fatal injuries to and the death of plaintiffs'

8

deceased, Sandra Wilkins, as set forth herein, and that Defendant Good was Defendant

Laughter's supervisor at the time of the accident involved herein.

38.   That the Plaintiffs are informed and believe and therefore allege that

defendant Robert Ward, an Officer within the employ of the town of Forest City, North Carolina,

knew or should have known that Defendant Laughter drove the 1990 Chevrolet upon the streets

and highways of the State of North Carolina in an illegal, careless, reckless and unlawful manner

while under the influence of alcohol; and, That, instead of investigating the said Defendant

Laughter's impairment and unlawful and illegal conduct, the Defendant Ward is believed to have

acted in concert with others to assist and aid the Defendant Laughter to conceal his obvious

wrong doing and impairment; and,

(a)    That the Defendant McDevitt was the Chief of Police of the Forest City Police

Department at the time these acts took place, and he was responsible for the actions of the

defendant Ward, and he was so until subsequently replaced by Defendant Chapman.

(b)    That on September 15, 1991, the Defendant Dillard was Defendant Ward's

immediate supervisor on the scene; and that Defendant Dillard had a duty to insure that defendant

Ward was not negligent in the fulfillment of his duty to investigate the accident fully; and that the

defendant Dillard failed to uphold his supervisory role in the matters herein involved.

(c)    That on September 15, 1991, the Defendant Hicks was a Sheriff Deputy under the

supervision of Defendant Laughter and he was on the scene of the accident and had a duty to

insure that defendant Laughter's wrong doing was properly reported and noticed to the plaintiffs;

and defendant Hicks was under a duty to investigate the accident fully; and that the defendant

Hicks failed to uphold his duty to investigate, protect and serve with regards to matters herein

9

involved.

39.  That the Defendants were under a duty to maintain the public highways against dangerous conditions such as allowing a police office to drive under the influence of an impairing substance, and/or to drive in a careless and reckless manner, to wit, speeding.

40.  That the Defendants were believed to be under a duty to protect and or warn the Plaintiffs' deceased, Sandra Wilkins, and/or the plaintiffs of the defendants' knowledge of Defendant Laughter's impairment and to arrest the said Defendant Laughter for driving under the influence and unlawful speeding on this and prior occasions.

41.  That the Defendants, all of them, individually, jointly, severally and in their official capacities did act in concert and did conspire to cover up and conceal the wrong doing of the defendant Laughter; and that they did in fact, by their actions, cover up and conceal the wrong doing of the defendant Laughter as follows:

(a)     That, after the accident, the family of the deceased, Sandra Wilkins, felt that the character of the investigation and the manner in which it was proceeding was unjust and unfair because the fatal victim was a black woman and the perpetrator was a White police officer, namely, Defendant Laughter.

(b)     That, knowing the tensions, distrust and heavy handedness of the police agencies against the Black community, then existing, the family of the deceased, Sandra Wilkins, believed that the Forest City Police Department and the Rutherford County Sheriff's Department would attempt to cover up the wrong doing of the White Sheriff's Deputy, Defendant Laughter, because the victim was Black.

10

(c)     That, several days after the death of the deceased, Sandra Wilkins, the family, believing that they were not and would not receive justice from the Forest City Police Department's investigation, sought out help and assistance from the Rutherford County Chapter of the National Association For the Advancement of Colored People (Hereinafter NAACP).

(d)     That the family of the deceased, Sandra Wilkins, requested the NAACP to investigate on their behalf the fatal death of the deceased, Sandra Wilkins.

(e)     That, days after the family had met with the NAACP, the NAACP scheduled a meeting with the Forest City Police Officials in an attempt to investigate and gather information concerning the fatal death of Sandra Wilkins, on behalf of and at the request of the Wilkins family.

(f)     That, as stated in the Affidavits of Eli Smith, and George Miller, Jr. which are attached hereto and incorporated herein by reference, a meeting between the police officials and the NAACP was held days after the NAACP had met with the deceased's family.

(1) Present at the meeting were Police Chief Tom McDevitt, Officer Conrad Dillard, and another police officer, representing the police agencies involved; and, Eli Smith, Reverend Joe Louis Miller, now deceased, James Young, now deceased, and George Miller, Jr., representing the NAACP and the family of the deceased. (See Affidavit of GM, Jr. ¶ 6.b., and Affidavit of ES ¶ 6.a.b.)

(2) That it was the "...belief and impression of the Black community that the negative and unjust manner in which the investigation had proceeded was due solely because the victim was a black woman." (Affidavit of GM, Jr. ¶ 6.c.)

(3) That the NAACP representatives "...requested from the Chief of Police a copy of the police report involving the death of Sandra Marie Wilkins." (Affidavit of GM, Jr. ¶ 6.d.)

11

(4) That, during the meeting, which was held many days after the September 15, 1991 completion date of the police report, the NAACP representatives "...were informed that there was no police report involving the matter." (Affidavit of GM, Jr. ¶ 6.e.)

(5) "That, to appease us and assure us that the investigation would be fair, the Chief of Police [Tom McDevitt] informed us that Officer Conrad Dillard, a black officer, was the investigating officer handling the matter." (Affidavit of GM, Jr. ¶ 6.f.)

(6) "That we, as the NAACP, reported to the family the information we received at the meeting with the police department, and that we were informed that there was no police report involving the matter." (Affidavit of GM, Jr. ¶ 7, and Affidavit of ES ¶ 7)

(7) "That it was not until September, 1998, that we found out that Officer Conrad Dillard, a Black officer, was not the investigating officer, but that a White officer, Officer Robert Ward was the investigating officer; and that the Chief of Police [Tom McDevitt] and Officer Conrad Dillard had mislead us and misrepresented the truth." (Affidavit of GM, Jr. ¶ 8)

(8) "That in September, 1998, we found out that the police report had been completed, dated and signed on September 15, 1991, by Officer Robert Ward, days before our meeting with the Chief of Police of Forest City, and Officer Conrad Dillard." (Affidavit of GM, Jr. ¶ 8.a.)

(9) "That, Officer Conrad Dillard knew at the time of our meeting with him and the Chief of Police that what we had been told was false; yet for years, Officer Conrad Dillard led us and the Black Community to believe that the information that we received during that meeting was true and accurate." (Affidavit of GM, Jr. ¶ 8.b.)

(g)   That the Plaintiffs, members of the family of the deceased, relied upon the

12

information received from the Forest City Police Department, by their duly authorized representatives, the NAACP.

(1) That the Defendants' knew that the NAACP, the family of the deceased and the Black Community at large would act upon the false and misleading information provided by the Forest City Police Department.

(2) That the Defendants' gave the NAACP the false and misleading information with the intent that the NAACP, the family of the deceased and the Black Community at large would rely upon information to their detriment.

(h) That it is believed and therefore alleged that the actions taken by the Forest City Police Department, to conceal the truth of the events above plead were:

(1) to protect and insulate the Defendants' Daniel Good and Floyd Laughter from any civil and possible criminal liability that may have been associated with the fatal death of the deceased; and,

(2) to prevent justice from being done when a White officer, Defendant Laughter, wrongfully takes the life of a Black person, the deceased Sandra Wilkins.

(i) That the Defendants did conspire and act in concert to prevent the Plaintiffs from petitioning the Courts of the United States and of the State of North Carolina in an attempt to seek proper redress of their grievances.

(j) That the Defendants, knowing that the Black Community at large was alarmed by the fatal death of the deceased and the unjust character of the investigation, as evidenced by the participation of the NAACP, knowingly and intentionally withheld the police report, a copy of which they had in their possession on the day they met with the NAACP, as evidenced by the

13

completion date on the face of the police report.

(k) That, to ensure that their conspiracy plan would work, the Defendants used the black face of a Black officer, Defendant Conrad Dillard, to overcome the suspicions of the NAACP and the Plaintiffs.

(l) That, the Plaintiffs was in fact mislead by and did in fact rely upon, to their detriment, the misrepresentations of the Defendants as alleged herein.

(m) That the Plaintiffs were in fact prevented from accessing the Courts of the United States and of North Carolina due to the conspiratorial acts perpetrated by the Defedants in concert.

42. That the Defendants, all of them, individually, jointly, severally and in their official capacities did act in concert and did conspire to cover up and conceal the wrong doing of the defendant Laughter; and that they did in fact, by their actions, cover up and conceal the wrong doing of the defendant Laughter, including the acts plead in ¶ 41 above, and further by filing an incomplete, false, fraudulent and misleading police reports concerning the matters involved:

(a) That the actions of the defendants were either done individually or with the knowledge of the acts being done with a reckless disregard for the truth and the rights of plaintiffs' deceased, Sandra Wilkins, and the plaintiffs' rights;

(b) That the defendants' acting in concert did in fact prevent the plaintiffs and/or their representatives from bringing this action within the normal time allowed by law;

(c) That the defendants' actions in concert were designed to and intended to prevent the truth of the matter from being revealed and thereby forever prevent justice from being done in this matter;

14

(d)     That because the defendants controlled all information involved herein and refused to provide the plaintiffs even with a police report of the accident, the plaintiffs had no manner, way or avenue to determine the true facts involved herein;

(e)     That, but for the illegal and concerted efforts and actions of the defendants the plaintiffs would have had notice of their rights to bring this action within the normal time frame allowed by law;

(f)     That the plaintiffs, Dwayne K. Wilkins, Kitina M. Wilkins, Debbie N. Wilkins, and Lagwenda Wilkins, were incompetent, as a matter of law, at the time the events involved herein occurred, and could not have brought this action on their own behalf;

(g)     That the plaintiffs detrimentally relied upon the individual and official actions of the defendants with regards to the truth of the matters involved herein;

(h)     That the defendants' actions in concert were designed to, intended to and did in fact violate the plaintiffs' First Amendment Rights guaranteed pursuant to the United States Constitution, namely access to the courts and the right to petition for the redress of grievances; all to prevent the truth of the matter from being revealed and thereby forever prevent justice from being done in this matter;

(i)     That the defendants' actions in concert were designed to, intended to and did in fact violate the plaintiffs' rights guaranteed them pursuant to Article 18 of the North Carolina Constitution, namely access to the courts; all to prevent the truth of the matter from being revealed and thereby forever prevent justice from being done in this matter;

(j)     That, since the defendants knowingly, intentionally and/or negligently prevented the plaintiffs from access to the United States Courts and the North Carolina State Courts to prevent

15

them from bringing this action sooner they are equitably estopped from asserting as a defense to the prosecution of this matter the passing of the statute of limitations.

(k)     That the illegal, concerted efforts and actions of the defendants tolled the running of the statute of limitations from the date of the fatal accident, September 15, 1991, until a time when the plaintiffs learned the truth of the matter involved herein.

(l)     That, without the request or knowledge of the plaintiffs a third party heard of the events that occurred on September 15, 1991; independently began investigating the matters; hired experts in the field of Traffic Accident Investigation and Reconstruction; and

(1)     That, pursuant to the investigation and expert testimony and tested, it was determined that the defendants had previously, beginning on September 15, 1991 and continuing up unto the filing of this action, either knowingly, intentionally and/or negligently with a gross and reckless disregard for the truth and their training as police officers, did in fact act in concert to cover up and conceal the truth of the matters involved herein; and,

(2)     That the expert testimony and tests tend to show that the Defendant Laughter was in grossly and intentionally in violation of the motor vehicle laws of the State of North Carolina at the time of the accident.

(3)     That the expert testimony and tests tend to show that the Defendant Laughter had ample opportunity to avoid the accident involved herein by properly using his brakes and or by swerving; and that he therefore had the duty to exercise the LAST CLEAR CHANCE to avoid the accident, but he failed to do so.

(4)     That the expert testimony and tests tend to show "That a vehicle traveling west at this accident scene could easily avoid collision at 35 MPH or higher speeds by using

16

brakes. The collision could also be avoided by swerving."

(5)     That the expert testimony and tests tend to show that the Defendant Robert Ward's investigation of the accident is inconsistent. It is therefore believed and alleged that the investigation was intentionally made to be inconsistent to prevent the plaintiffs from exercising their United States and North Carolina constitutional rights. For, "In the summary the officer (Officer Robert Ward) indicates there are tire impressions but there isn't any mention of a total measurement of this tire evidence. The Officer indicates the victim was thrown but the damage he indicates on the report would show that the victim rode the vehicle up to the windshield area or higher."

(6)     That the expert testimony and results of the experts tests are attached hereto as Plaintiffs' Exhibit No #1, and incorporated herein by reference and plead and made a part of this complaint as if actually plead herein in its entirety.

(7)     That the expert testimony and tests tend to show that the Defendants, all of them, willfully and intentionally failed their duty to investigate this matter in a manner consistent with their own Police Investigation Procedures and pursuant to the normal and basic training of law enforcement officers in the State of North Carolina.

(m)     That the plaintiffs received confirmation of their 1991 suspicions that the defendants herein were attempting to cover up the wrong doing of the defendant Laughter when they received a copy of the police report and upon receipt of the expert testimony and test results that were received on October 21,

1998.

(n)     That since the plaintiffs herein learned of their rights to bring this action on October

17

21, 1998, the statute of limitations did not began to run until October 21, 1998;

(o)     That equity demands that the defendants be estopped from using the statute of limitations as a bar to this action being brought forth and that the plaintiffs be allowed to proceed with the prosecution of this matter with the statute of limitations, for all possible causes of actions, being tolled from September 15, 1991, the beginning date of the illegal actions of the defendants until October 21, 1998.

43. That, without the police report, which the Plaintiffs had been led to believe did not exist by the Defendants, the Plaintiffs could not have commissioned and/or produced the expert's report before the running of the Statute of Limitations, because before the receipt of the police report there was only suspicion and speculation. That is was the actual receipt of the police report that caused the suspicion and speculation to appear more as fact; and that the expert's report caused the suspicion and speculation to become fact.

44. That the Defendants, when they undertook to perform an investigation of the accident scene, the law required of them to do so in a fair, honest and non-discriminatory manner; but the defendants willfully and intentionally, motivated by a desire to protect the career of a White police officer and cause harm to the black Plaintiffs, failed to perform their police duties in a fair, honest and non-discriminatory manner.

45. That the said actions taken by the individual defendants involved herein were undertaken in their individual capacities to misrepresent the truth and prevent justice and in their capacities as final decision-makers pursuant to authority granted to them by the town of Forest City, North Carolina, Sheriff Daniel Good, and/or Rutherford County North Carolina and such actions represented official municipal policy and practice.

18

46. That all of the defendant police officers involved herein, having taken an oath to protect, serve and uphold the laws of the United States and the State of North Carolina, owed a duty to the Plaintiffs herein to perform their policing duties in a fair, honest and non-discriminatory fashion, but they failed to do so, intentionally causing great harm to the Plaintiffs; and preventing the Plaintiffs from taking advantage of the equal protection of the laws of the United States and the State of North Carolina.

## FIRST CLAIM FOR RELIEF
### WRONGFUL DEATH

47. Plaintiffs hereby incorporates by reference paragraphs 1 through 46 inclusive of this complaint with the same force and effect as if fully set forth herein.

48. That the aforesaid actions and acts by the defendant Laughter and defendant Good were all the proximate causes of the injuries to and the death of the plaintiffs' deceased, Sandra Wilkins; and this claim is brought pursuant to North Carolina General Statutes § 28A-18.2.

49. That but for the illegal, unlawful, reckless and negligent driving of the defendant Laughter the plaintiffs' deceased, Sandra Wilkins, would not have suffered the fatal wounds and killed her on the night of September 15, 1991, on a clear, dry and well lit highway.

50. That the aforesaid acts by the defendant Laughter were in conscious and intentional disregard of and with indifference to the rights and safety of others, including the plaintiffs' deceased, Sandra Wilkins.

51. That as a direct and proximate result of the aforesaid negligent and intentional, illegal and unlawful acts of the defendant Laughter the plaintiffs' deceased, Sandra

19

Wilkins, sustained severe and fatal injuries to and about her body:

(a) That, the plaintiffs' deceased, Sandra Wilkins, suffered and continued to suffer until her death, great pain of body and mind;

(b) That expenses have been incurred for the funeral and burial services of the plaintiff's deceased, Sandra Wilkins;

(c) That at the time of her death, the plaintiff's deceased, Sandra Wilkins, was of excellent health, constitution, vigor and habit and that the plaintiffs have lost the services, protection, care and assistance of the plaintiffs' deceased, Sandra Wilkins, together with her society, companionship, comfort, guidance, kindly offices and advice;

52. Defendants' actions as described herein constitute neglect, misconduct and misbehavior in the office of the Sheriff of Rutherford County.

53. That the Defendant Good failed to adequately and properly train the defendants Jimmy Hicks and Floyd Laughter.

54. That the plaintiffs are informed, believes and therefore alleges, that they are entitled to recover on behalf of themselves as heirs of the plaintiffs' deceased, Sandra Wilkins, compensatory damages for her WRONGFUL DEATH by the acts of the Defendants in the amount of ONE MILLION DOLLARS ($1,000,000.00).

### SECOND CLAIM FOR RELIEF FOR VIOLATION OF PLAINTIFFS' UNITED STATES CONSTITUTIONAL RIGHTS

55. Plaintiffs hereby incorporates by reference paragraphs 1 through 54 inclusive of this complaint with the same force and effect as if fully set forth herein.

20

56. Defendants' actions as described herein constitute the deprivation and violation of plaintiffs' rights to access the courts, to petition the government for the redress of grievances.

57. Defendants' actions as described herein deprived plaintiffs of their clearly established and well-settled constitutional rights as secured by the First Amendment to the United States Constitution.

58. As a direct and proximate result of the actions described herein, plaintiffs suffered and continues to suffer damages as well as mental and emotional distress, anxiety, humiliation, fright and despair.

59. Defendants' actions as described herein exhibit reckless and callous indifference to plaintiffs' federally protected rights, and therefore entitles plaintiffs to punitive damages.

## THIRD CLAIM FOR RELIEF FOR VIOLATION OF PLAINTIFFS' STATE CONSTITUTIONAL RIGHTS

60. Plaintiffs hereby incorporates by reference paragraphs 1 through 59 inclusive of this complaint with the same force and effect as if fully set forth herein.

61. Defendants' actions as described herein constitute the deprivation and violation of plaintiffs' rights to access the courts and to petition the government for the redress of grievances.

62. Defendants' actions as described herein deprived plaintiffs of their clearly established and well-settled constitutional rights as secured by Article 18 of the North Carolina Constitution.

21

63. As a direct and proximate result of the actions described herein, plaintiffs suffered and continues to suffer damages as well as mental and emotional distress, anxiety, humiliation, fright and despair.

64. Defendants' actions as described herein exhibit reckless and callous indifference to plaintiffs' state protected rights, and therefore entitles plaintiffs to punitive damages.

## FOURTH CLAIM FOR RELIEF FOR NEGLECT, MISCONDUCT AND MISBEHAVIOR IN THE OFFICE OF THE SHERIFF OF RUTHERFORD COUNTY

65. Plaintiffs hereby incorporates by reference paragraphs 1 through 64 inclusive of this complaint with the same force and effect as if fully set forth herein.

66. Defendants' actions as described herein constitute neglect, misconduct and misbehavior in the office of the Sheriff of Rutherford County.

67. As a direct and proximate result of the neglect, misconduct and misbehavior in the office of the Sheriff of Rutherford County, plaintiffs suffered and continues to suffer damages as well as mental and emotional distress, anxiety, humiliation, fright and despair.

68. Because of this neglect, misconduct and misbehavior, defendant Good and is liable to plaintiff under defendant Good's official Sheriff's bond pursuant to N.C.G.S. § 162.8, in an amount equal to the bond.

WHEREFORE, the plaintiffs pray that:

1. The defendants be equitably estopped from using and/ or asserting as a defense, to the prosecution of the claims complained of herein, the running of the statute of

22

limitations.

2. The plaintiffs in the first claim for relief have and recover compensatory damages against the defendants, in their individual and official capacities, jointly and severally, in the amount of ONE MILLION DOLLARS ($1,000,000.00);

3. The plaintiffs in the second claim for relief demands compensatory damages against the defendants, in their individual and official capacities, jointly and severally, in the amount of ONE HUNDRED THOUSAND $100,000.00) DOLLARS, and punitive damages in the amount of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS;

4. The plaintiffs in the third claim for relief demands compensatory damages against the defendants, in their individual and official capacities, jointly and severally, in the amount of ONE HUNDRED THOUSAND $100,000.00) DOLLARS, and punitive damages in the amount of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS;

5. The plaintiffs in the fourth claim for relief demands compensatory damages against the defendants, in their individual and official capacities, jointly and severally, in the amount of TWO HUNDRED THOUSAND $200,000.00) DOLLARS, and punitive damages in the amount of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS;

6. Their judgment bear such interest as is provided by law;

7. A jury trial be granted upon all issues of fact;

8. They have and recover their attorneys' fees pursuant to 42 U.S.C. § 1988;

9. The costs of this action be taxed against defendants;

10. They have and recover such other and further relief as to the court may seem just and proper.

Submitted this the 24 day of March, 1999.

ATTORNEY FOR PLAINTIFFS:

MICHAEL LEE KING
ATTORNEY AT LAW

KING & STOCKTON
ATTORNEYS AT LAW
POST OFFICE BOX 1737
SALISBURY, NC 28145-1737
N.C. State Bar # 13572
Phone: 704-636-2176

24

## VERIFICATIONS

STATE OF NORTH CAROLINA
COUNTY OF _Polk_

DWANE WILKINS, first being duly affirmed, says that he is a PLAINTIFF, in the foregoing action, that he has read the foregoing COMPLAINT, OR HAVE HAD IT READ TO THEM, that the same is true except as to matters herein stated upon information and belief, and as to those matters, he believe them to be true.

This the _24th_ day of _March_ 1999.

(OFFICIAL SEAL)     _Dwane K. Wilkins_
                         DWANE K. WILKINS

AFFIRMED to and subscribed before me, this the _24th_ day of _March_, 1999. _Janice C. Miller_

My Commission Expires: _2/14/2002_ . NOTARY PUBLIC


## VERIFICATION

STATE OF NORTH CAROLINA
COUNTY OF _Polk_

LADWENDA WILKINS, first being duly affirmed, says that she is a PLAINTIFF, in the foregoing action, that she has read the foregoing COMPLAINT, OR HAVE HAD IT READ TO THEM, that the same is true except as to matters herein stated upon information and belief, and as to those matters, she believe them to be true.

This the _24th_ day of _March_ 1999.

(OFFICIAL SEAL)     _Ladwenda Wilkins_
                         LADWENDA WILKINS

AFFIRMED to and subscribed before me, this the _24th_ day of _March_, 1999. _Janice C. Miller_

My Commission Expires: _2/14/2002_ . NOTARY PUBLIC

25

# VERIFICATION

STATE OF NORTH CAROLINA
COUNTY OF _Polk_

     LULA WILKINS, Administrator of the Estate of Sandra Marie Wilkins, first being duly affirmed, says that she is a PLAINTIFF, in the foregoing action, that she has read the foregoing COMPLAINT, OR HAVE HAD IT READ TO THEM, that the same is true except as to matters herein stated upon information and belief, and as to those matters, she believe them to be true.

     This the _24th_ day of _March_ 1999.

(OFFICIAL SEAL)     _Lula Wilkins_
                    LULA WILKINS, Administrator of Estate of
                    Sandra Marie Wilkins

AFFIRMED to and subscribed before me, this the _24th_ day of
_March_, 1999. _Janice C Miller_

My Commission Expires: _2/14/2002_ .    NOTARY PUBLIC


# VERIFICATION

STATE OF NORTH CAROLINA
COUNTY OF _Polk_

     DEBBIE N. WILKINS, first being duly affirmed, says that she is a PLAINTIFF, in the foregoing action, that she has read the foregoing COMPLAINT, OR HAVE HAD IT READ TO THEM, that the same is true except as to matters herein stated upon information and belief, and as to those matters, she believe them to be true.

     This the _24th_ day of _March_ 1999.

(OFFICIAL SEAL)       _Debbie N Wilkins_
                    DEBBIE N WILKINS

AFFIRMED to and subscribed before me, this the _24th_ day of _____.

26

_March_, 1999. _Janice C Miller_

My Commission Expires: _2/14/2002_ .    **NOTARY PUBLIC**

## VERIFICATION

STATE OF NORTH CAROLINA
COUNTY OF _Polk_

KITINA M. WILKINS, first being duly affirmed, says that she is a PLAINTIFF, in the foregoing action, that she has read the foregoing COMPLAINT, OR HAVE HAD IT READ TO THEM, that the same is true except as to matters herein stated upon information and belief, and as to those matters, she believe them to be true.

This the _24th_ day of _March_ 1999.

(OFFICIAL SEAL)        _Kitina M Wilkins_

                            KITINA M. WILKINS

AFFIRMED to and subscribed before me, this the _24th_ day of _March_, 1999. _Janice C Miller_

My Commission Expires: _2/14/2002_ .    **NOTARY PUBLIC**

29

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that he has served upon the Defendants in the above-entitled action a copy of the foregoing Amended Complaint by depositing in the United States mail in an envelope with sufficient postage thereon addressed to their attorneys of record as follows:

Patrick Gillen       |    Frank P. Graham
3300 One First Union Ctr.   |   Post Office Box 7647
301 S. College Street     |   Ashville, N.C. 28801
Charlotte, N.C. 28202-6025 |

THIS the 25 day of March, 1999.

MICHAEL LEE KING

PO BOX 1737
SALISBURY, NC 28145-1737
N.C. State Bar # 13572
Telephone: (704) 636-2176

# NOTE:

# THIS IS A PARTIALLY SCANNED DOCUMENT.

# PLEASE SEE THE CASE FILE FOR ATTACHMENTS, EXHIBITS, AFFIDAVITS OR OTHER MATERIAL WHICH HAS NOT BEEN SCANNED.